UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:08CR53-RLV

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | ORDER on RESTITUTION |
| ) | |
| DAVID THOMPSON, ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the court on the Defendant's Sealed Sentencing Memorandum, (Doc. #31), filed February 24, 2010; Government's Sealed Sentencing Memorandum (Doc. #32), filed February 26, 2010; the Government's Supplemental Memorandum in Support of Order of Restitution (Doc. #37), filed May 25, 2010; Defendant's Response in Opposition (Doc. #38), filed May 28, 2010; the Government's Reply (Doc. #41), filed June 18, 2010; and the Defendant's Response to the Government's Reply (Doc. #42), filed July 13, 2010.

## BACKGROUND

On June 30, 2010, Defendant pled guilty to two related counts of possessing child pornography, such possession being in violation of 18 U.S.C. § 2252(a)(4)(b) as to the first count and § 2252(a)(2) as to the second count. Defendant was sentenced on April 13, 2010. At the sentencing hearing, the court ordered restitution, but left open the amount for a later time. The parties were directed to file arguments and supporting documents with regard to the issue of restitution. (See Doc. #36). Both parties have since seized the opportunity to brief the court. Defendant has requested an evidentiary hearing, which the Government opposes.

1

Relevant to the present motion for restitution, among the images of child pornography in Defendant's possession were included at least one image from the "Vicky" series of child pornography.[1] Now an adult, Vicky, through the Government, has submitted loss figures for courts to consider when determining the amount of restitution owed to her as a victim of child sexual abuse.

## DISCUSSION

Title 18, United States Code, Section 2259, the Mandatory Restitution for Sexual Exploitation of Children Act, ("§2259") requires exactly what its title suggests: that defendants convicted of the sexual abuse and exploitation of children must pay restitution to their victims. The mandatory nature of an award of restitution in these cases is *explicit and unwaivable*. Section 2259(a) states that "the court shall order restitution for any offense under this chapter." (emphasis added); see also 18 U.S.C. § 2259(b)(4)(A) (stating that "issuance of a restitution order under this section is mandatory"). In addition, such order of restitution must compensate the child victim of sexual exploitation or abuse "in the full amount of the victim's losses." 18 U.S.C. § 2259(b).[2] The procedure for issuing and enforcing an award of restitution under § 2259 is governed by 18 U.S.C. § 3664, which also applies to the issuance of restitution awards pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663.

### I. Ninety Day Deadline

The district court is required to make a final determination of victim's losses and impose restitution within 90 days of sentencing. 18 U.S.C. § 3664(d)(5). However, the Supreme Court has held that this deadline does not limit the district court's jurisdiction. Dolan v. United States, 130

---

[1] The name "Vicky" is a pseudonym for a known victim of child sexual abuse. Images of her abuse have been distributed widely as child pornography.

[2] While Defendant has agreed to pay full restitution in his plea agreement, the Defendant is still allowed to object to the appropriate *amount* of restitution, since that is all he has agreed to pay.

S.Ct. 2533, 2539 (2010) ("The fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution."). At the initial sentencing hearing, this court ordered restitution and left open only the amount, so the parties had ample notice that restitution would be ordered. Id. at 2537 ("[A] sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution-at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount."). Neither party, nor the victim, has objected to the court's timeline. The court still has the power to order restitution, and now turns to that issue.

**II. Defendant's Request for Discovery and an Evidentiary Hearing**

Defendant requests ample discovery from the Government and the victim, Vicky, in addition to the briefings and exhibits the Government has already provided. (Doc. #38, at 3-5). Defendant points to Hamdi v. Rumsfeld, 542 U.S. 507 (2004), and the Due Process Clause of the United States Constitution to support this proposition. (Doc. #38, at 3-5). However, defendants do not generally have a constitutional right to discovery. United States v. Uzenski, 434 F.3d 690, 709 (4th Cir. 2006) ("Generally, criminal defendants do not have a constitutional right to discovery, absent a statute, rule of criminal procedure, or some other entitlement."). Defendant cites no statute purporting to grant this right.

The court now considers the requirements under the Due Process Clause. In Hamdi, the Supreme Court held "that a citizen-detainee seeking to challenge his classification as an enemy combatant must receive notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." 542 U.S. at 533.

3

Assuming that this case applies to the Defendant, this court has amply satisfied these requirements. Defendant has been given notice during his sentencing that restitution would be ordered. In addition, Defendant has filed three briefs with the court to rebut the Government's arguments. The court has duly considered Defendant's fillings. See United States v. Polson, 285 F.3d 563, 567 (7th Cir. 2002) ("A sentencing court is entitled to consider a broad range of information in the sentencing process. Due process requires, however, that the sentencing court afford the defendant a meaningful opportunity to rebut contested evidence."). This would seem to fulfill the requirements of due process. As Defendant has been given and taken advantage of his right to rebut the Government's factual assertions, the court finds no violation of Defendant's rights under the Due Process Clause.

The court also finds that the record, which includes six briefings and hundreds of pages of exhibits, is sufficient to make a determination, and both parties' legal contentions are adequately presented in the materials before the court. Further argument would not aid the decisional process, so Defendant's request for an Evidentiary Hearing is **DENIED**.

**III. The Meaning of "Victim" Under § 2259**

In order to be entitled to an award of restitution under § 2259, Vicky must be a "victim" of Defendant's crimes within the meaning of the statute. There can be no doubt that this is the case. "The possession, receipt, and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters." United States v. Sherman, 268 F.3d 539, 544 (7th Cir. 2001). In addition to violating the victim's right to privacy, possession of child pornography also harms the child depicted by "contributing to a[n ongoing] cycle of abuse, and perpetuating a market for the sharing of the material." United States v. Hicks, No. 1:09-cr-150, 2009 WL 4110260, at *2

4

(E.D.Va. Nov. 24, 2009); see also United States v. Church, 701 F.Supp.2d 814, 820-22 (W.D.Va. 2010) (discussing the "three distinct harms" visited upon child pornography victims – the emotional harm caused by the knowledge of the proliferation of images of abuse, the violation of the right to privacy, and the harm caused by the defendant's sustaining and perpetuating a market for child pornography).

Both Congress and the Supreme Court have catalogued the unique harms that the continued existence, possession, and distribution of child pornography inflicts on the individuals depicted. In the case of New York v. Ferber, the Supreme Court specifically recognized that the harm to sexually abused children "is exacerbated" by the circulation of materials depicting the abuse. 458 U.S. 747, 759 (1982). As support for this assertion, the Court quoted various experts who explained:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography . . . . It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions . . . . The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child.

Id. at 759 n.10 (citations and alterations omitted). These quotations were later excerpted by Congress to support passage of the Child Pornography Prevention Act of 1996,[3] see S. Rep. 104-358 (1996), and the Ferber decision is also cited in the legislative history of § 2259, see United States v. Danser, 270 F.3d 451, 455 (7th Cir. 2001). Thus, by both legislative intent and judicial construction, the law is clear that the children depicted in child pornography are victims not only of

---

[3] This law is not directly implicated in the present case and was in fact overturned as unconstitutionally overbroad by the Supreme Court in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002).

5

the makers of the pornography but also of its possessors. See United States v. Lindauer, No. 3:10–cr–00023, 2011 WL 1225992 at *3 n.2 (W.D.Va. March 30, 2011) (summarizing and citing the numerous federal courts that agree with this result).

**IV. Causation Requirement**

The next issue that must be considered is whether § 2259 contains a causation requirement. The statute itself lacks an explicit causation requirement. Nevertheless, most courts to consider the question have implied a causation requirement from the statutory definition of "victim" (i.e., "the individual harmed as a result of a commission of a crime under this chapter") and from the language of the catchall damages provision ("other losses suffered by the victim as a proximate result of the offense"). § 2259 (emphases added); see also United States v. Monzel, 641 F.3d 528, 535 (D.C. Cir. 2011) (noting a circuit split, and holding with the plurality that the restitution amount must be a "proximate result of the offense"). [4]

In the present case, the court finds that Defendant's conduct was a proximate cause of Vicky's injury. In receiving and possessing the pornographic images of Vicky taken while she was a child, Defendant participated in an ongoing cycle of abuse and thereby contributed to the victims' mental and emotional trauma. As a general proposition, that the continued existence and possession of images such as these harm the person depicted is abundantly established by the cases (and the expert testimony incorporated therein) cited in the court's discussion of Vicky's status as a victim, supra. That the criminal behavior of Defendant in this case caused specific harm to Vicky is also well-documented by the victim impact statements and psychological reports submitted with the

---

[4] "It is a bedrock rule of both tort and criminal law that a defendant is only liable for harms he proximately caused." Monzel, 641 F.3d at 535-36 (summarizing the relationship between this traditional requirement and § 2259).

Government's motion for restitution. The psychologist who examined Vicky found that Vicky's "knowledge of the proliferation of her abuse through the internet has exponentially added to the types of triggers that can reactivate trauma-related thoughts or feelings . . . and can bring her trauma immediately into the present." (Doc. #37, Ex. 3 at 4-5). These snippets are just examples of the thorough analysis in the psychological evaluations that connects conduct such as Defendant's to the victim's injuries.

**V. Restitution Amount**

    **A. Standard of Review**

Having established that Vicky is a victim within the meaning of § 2259, and having established that Defendant's conduct proximately caused Vicky injury, the court must now determine the amount of restitution owed to each victim. Section 2259 instructs the court to award "the full amount of the victim's losses," § 2259(b)(1), defined as "any costs incurred by the victim" for six categories: "(A) medical services; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees and other litigation costs; and (F) any other losses suffered by the victim as a proximate result of the offense." § 2259(b)(3)(A)-(F). Although courts do require "a causal connection between the offense of conviction and the victim's harm" before awarding restitution, no circuit to address the issue has "imposed a requirement of causation approaching mathematical precision" when determining the amount of restitution that is appropriate. United States v. Doe, 488 F.3d 1154, 1159-60 (9th Cir. 2007) (quotation omitted); Monzel, 641 F.3d at 540. Instead, all that is required

is that "a rule of reasonableness be applied." Doe, 488 F.3d at 1160. This slightly relaxed standard [5]
is appropriate given "the strong Congressional intent behind section 2259." Danser, 270 F.3d at 455
n.5. The burden of establishing a victim's loss rests with the Government and requires a
preponderance of the evidence. United States v. Squirrel, 588 F.3d 207, 213 (4th Cir. 2009). While
this analysis can be difficult due to the nature of the offense and the numerous known and unknown
defendants:

> A district court cannot avoid awarding the "full amount of the victim's losses," 18 U.S.C. § 2259(b)(1), simply because the attribution analysis is difficult or the government provides less-than-ideal information. The court must order restitution equal to the amount of harm the government proves the defendant caused the victim. *See id.* § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government.").

Monzel, 641 F.3d at 539-40.

### B. Apportionment of Damages

In a case such as this where more than one defendant has contributed to the loss of a victim, "the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss." 18 U.S.C. § 3664(h). Given the relatively minor nature of Defendant's contribution to the victims' losses in this case, and the difficulty in coordinating joint liability among the many different defendants who have been and will be convicted of possessing images of Vicky, the court finds that

---

[5] This is in contrast to the somewhat stricter standard of causation under the Mandatory Victim's Restitution Act ("MVRA"), 18 U.S.C. § 3663A, which requires a showing that any loss was "directly and proximately caused by the defendant's offense conduct." United States v. Squirrel, 588 F.3d 207, 215 (4th Cir. 2009). However, the MVRA differs from § 2259 in that the MVRA's causation standard is clearly articulated in that statute's definition of a "victim." § 3663A(a)(2) (defining a victim as "a person directly and proximately harmed as a result of the commission of an offense" (emphasis added)).

apportioning a discrete amount of the victims' losses to Defendant is in the interests of justice. Because Defendant's crime was mere possession of pornographic images, because Defendant never had any contact with the victims, and because regrettably there are many individuals who possess similar images, the court will not hold Defendant jointly and severally liable. See Monzel, 641 F.3d at 538-39 (upholding the district court's decision to apportion a discrete amount of liability to the defendant and discussing the rationale behind such a decision).

### C. Amount of Restitution

In the present case, the Government has established by a preponderance of the evidence that Vicky has suffered losses for treatment and counseling related to their abuse and exploitation. Vicky had previously submitted a loss amount of $146,629.19 as the cost of past and future treatment. (Doc. #32). After reviewing the supporting documentation, including the psychological consultation and victim impact statements, the court concludes that this amount has been established by a preponderance of the evidence. A host of other courts have examined these same documents and reached the same conclusion in other cases involving the possession of Vicky's images. See generally Hicks, 2009 WL 4110260, at *6, *6 n.8-9 (citing cases).

On May 25, 2010, Vicky, through the Government, filed supplemental briefing that asked for an increased amount of restitution, $383,803.60.[6] (Doc. #37). This amount includes $193,025.00 for future counseling expenses, $147,830.00 in vocationally related losses, $32,448.60 in expenses paid in out of pocket costs for evaluation, supporting records, and travel by her attorney, and

---

[6] The MVRA allows the court to amend restitution orders if losses are subsequently discovered, and gives no limitations period constraining this power. § 3664(d)(5). In any case, the court has not yet issued a restitution order in this case. See Dolan, 130 S.Ct. at 2540 ("The sentence imposes no time limit on the victim's subsequent discovery of losses."). The court will consider the losses subsequently discovered and filed with the court by the Government.

$10,500.00 in attorney's fees. (Doc. #37, at 1). The Government noted that as of April 9, 2010, the victim had received $44,750.00 in restitution payments. (Doc. #37, at 1).

The court has also considered the mitigating factors the court previously noted during the sentencing hearing, which include the Defendant's low IQ, the influence of the "family friend" that introduced the Defendant to these images, the Defendant's remorse, and the Defendant's family and work history.

### i. Therapy and Counseling Costs

This additional restitution requested by the Government appears to be the result of the victim's increasing awareness of the widespread dissemination of the Vicky series, and the trauma that resulted. Previously, Vicky appeared to be coping in a manner that speaks to her strength of character. Vicky's psychological reports stated her specific personal characteristic make her unusually well-off for a survivor of child sexual abuse:

> Rather, it is because she eschews the view of being a victim, is very much committed to being a survivor and . . . will in time become an increasingly resilient and integrated "thriver," transcendent from Type I and Type II traumas to which she has been and will be exposed. She is sufficiently invested in a path that, unless she has a significant setback in the future, she would do well to continue, concurrent with the therapy recommended here.

(Doc. #37, Ex. 3, at 9).

Unfortunately, Vicky's psychological consultant reports that she experienced a significant setback around May of 2009, when she attended a sentencing hearing of individuals who had possessed images of her abuse. (Doc. #37, Ex. 4, at 2). Vicky was exposed to a video that showed the "exponential" proliferation of the dissemination of her images. Id. She also saw another video confiscated from a downloader entitled "Where is Vicky now?". Id. This video included "obscene"

subtitles and recent pictures of Vicky and her family. Id. This experience undermined Vicky's goal of helping other victims, in the hope "that something meaningful and constructive might come from something so 'evil and dark.'" Id. at 3. Vicky has subsequently quit her part-time job that she took in order to pay for school, citing recurrent panic attacks and fears that any men she encounters may have seen the Vicky series of images. Id. Vicky continues to suffer from anxiety, depression, and sleep difficulties that have been aggravated by the knowledge of the extensive proliferation of the Vicky series. Id. at 3-5. Vicky's psychological consultant now recommends that Vicky receive much more extensive and frequent therapy, including inpatient treatment. Id. The court finds that, after considering the detailed reports submitted by the Government, that Vicky's stated amount for losses attributable to therapy costs, $193,025.00, have been established by a preponderance of the evidence.

The court will award $2,300 for loss within this category. The Government, in its original sentencing memorandum, asked for $146,629.19 in therapy and counseling costs. (Doc. #32). Now, as a result of Vicky's retraumatization detailed supra, the Government now asks for $193,025.00. (Doc. #37). That is a difference of $46,395.81. With regards to the initial amount of $146,629.19, the court finds that the most substantial cause of this loss was the initial abuse. The court will divide restitution equally among all possessors of her images after first discounting half of the total restitution amount as attributable solely to Vicky's abuser. The court finds that this adequately considers the relative fault of the Defendant, the initial abuser, and others convicted of possession or distribution of the Vicky series, and will award $1,500 for this loss.

However, the court finds that the restitution amount for the additional $46,395.81 must be apportioned differently. As discussed supra, Vicky appeared to be recovering at an accelerated rate, as compared to other similarly situated victims. However, the knowledge of the widespread

11

proliferation of the Vicky series triggered her subsequent setback, and caused her psychological consultant to recommend additional therapy. The court finds that the individuals who possess images of Vicky, like Defendant, must be apportioned a greater proportion of the loss for this amount, and the apportionment towards the initial abuse must be lessened. As a result, the court will award $800 for this loss, for a total of $2,300 in restitution for the victim's therapy and counseling costs. Although this award is somewhat less than in other cases, the court finds that these amounts appropriately quantify Defendant's level of contribution to the victims' losses.

### ii. Lost Income

Vicky has also submitted a request for restitution in compensation for lost future earnings in the amount of $147,830.00. § 2259(b)(3)(D) states that restitution awards shall include restitution for "lost income." Most courts to consider the issue have held that "lost income" -- at least when interpreting a similar "lost income" provision in the MVRA -- includes all lost income, including lost future earnings. See United States v. Serawop, 505 F.3d 1112, 1124-25 (10th Cir. 2007); United States v. Cienfuegos, 462 F.3d 1160, 1163-69 (9th Cir. 2006); United States v. Oslund, 453 F.3d 1048, 1062-63 (8th Cir. 2006); but see United States v. Fountain, 768 F.2d 790, 801-02 (7th Cir. 1985) (expressing disapproval of an award of future earnings as restitution under a different statute) (cited approvingly in Danser, 270 F.3d at 455 n.5). In light of the generous phrasing and broad remedial purpose of § 2259, this court finds that loss of future earnings is an appropriate component of restitution.

The Government has submitted a detailed report to support Vicky's claim for lost future earnings. (Doc. #37, Ex. 5). For this reason, the court finds that the Government has met its burden to establish Vicky's lost future earnings by a preponderance of the evidence in the amount of

$147,830.00. In part because the Defendant has not proffered any evidence to rebut the Government's report, the court finds that the calculations are not speculative, but are instead based upon facts amply supported by the record. See Oslund, 453 F.3d at 1063 (agreeing with the Seventh Circuit in Fountain, 768 F.2d at 802, in noting that the district court should consider whether the calculation is "burdensome, complicated, or speculative" in deciding whether to award lost future earnings).

However, the court will only award a small fraction of Vicky's lost wages as restitution in this case. In the economic loss report submitted to the court, the vocational expert,[7] along with the psychological consultant, noted that Vicky would likely experience several regressions in her recovery that would cause interruptions in her career. (Doc. #37, Ex. 5, at 4). The vocational expert also opines that Vicky will be unable to attend college full time and hold down a part time job to help pay for her educational costs as a result of this retraumatization. (Doc. #37, Ex. 5, at 6). The expert also noted that Vicky would likely take longer to finish school as a result of her trauma, and would incur additional costs as a result. Id. According to the psychological consultant's addendum report, Vicky's decision to drop out was triggered by the loss of the financial support her job gave her, and the recurrent panic attacks. (Doc. #37, Ex. 4, at 4). In addition, some of the class content she witnessed retriggered memories of her abuse. Id.

The court finds that both the initial abuse and the continued possession of her image by individuals such as Defendant were proximate causes of this loss. However, the court also finds that,

---

[7] The court notes the narrow focus of the vocational expert's investigation. "I will focus exclusively on the impact of [the victim's] discovery that pornographic images of her had been widely distributed on the internet nationally and internationally. [The victim's] knowledge and understanding that the images themselves will persist in perpetuity has [led] to significant psychological sequelae that impacts her education, career development, vocational situation, and earning capacity." (Doc. #37, Ex. 4, at 1).

13

compared to the initial abuse suffered by Vicky, Defendant's actions were only a small part of the cause. As a result, the court has reduced the award significantly to $500. Nevertheless, the court finds that the $500 award is appropriate because the psychological problems associated with Vicky's knowledge of the continued distribution of her images undoubtedly impairs her ability to heal and to return to school. As a result, the court finds that Defendant's actions have proximately caused $500 in lost earnings to his victim.

### iii. Attorney's Fees and Costs

The Government also asks the court for $10,500.00 in attorney's fees for the victim's attorney and for $32,448.60 in expenses paid in out of pocket costs for evaluation, supporting records, and travel by her attorney, See § 2259(b)(3)(E) (allowing awards of attorney's fees and costs). The court finds that the initial abuse was, at most, only a tiny part of the need for a representative for the victim, and little liability will be apportioned to Vicky's biological father for the attorney's fees and costs. But for the actions of the distributers and possessors of the Vicky series of images, Vicky would not have required an attorney to ensure her rights were being protected in the ensuing and voluminous litigation. See 18 U.S.C. § 3771 (noting that a victim may be represented by an attorney to ensure his or her enumerated rights are protected). As a result, the Defendant will be apportioned a higher proportion of the attorney's fees than his apportionment of the other categories of losses. However, Vicky's medical evaluations will be apportioned to both the Defendant and the initial abuser, as the court finds the initial abuse is a proximate cause of the victim's need for counseling and evaluation. The court finds that the Government has proven by a preponderance of the evidence that this amount is appropriate for the victim's attorney's services given the attorney's experience and qualifications, and the high number of cases involving the

victim. (See Doc. #37, Ex. 6). Given the many defendants both known and unknown to the court, and the mitigating factors discussed supra, the court will order restitution in the amount of $1000 for this category.

## SUMMARY

In conclusion, the court awards $3,800 in restitution, composed of $2,300 for therapy and counseling costs, $500 in lost income, and $1000 in attorney's fees and costs. See Lindauer, 2011 WL 1225992, at *4 (considering Vicky's "updated" information and awarding $5,448.75 in restitution). The court also notes that the victim's attorney requests that restitution be made in a way that respects the victim's privacy, in the form of payments to a trust account overseen by the victim's attorney. (Doc. #37, Ex. 1, at 8). Given the sensitive nature of this case, the court requests that the Bureau of Prisons and the U.S. Probation Office work with Defendant and the victim's attorney to make restitution payments in this fashion.

## ORDER

**WHEREFORE**, for the foregoing reasons, Defendant Thompson is **ORDERED** to pay restitution to "Vicky" in the amount of $3,800. The court has determined that Defendant does not have the ability to pay interest and orders that the interest requirement is waived. Payment of these amounts shall be due immediately. To facilitate payment, the court recommends that the Bureau of Prisons allow Defendant to participate in the Inmate Financial Responsibility Program.

In the event that the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervised release, payment shall be due in equal monthly installments of $50.00, and such payments shall commence sixty (60) days after Defendant's release to a term of supervision. During Defendant's term of supervision, the U.S. Probation Officer shall pursue

collection of the amount due and may request the court to establish or modify a payment schedule if appropriate.

Defendant shall notify the court of any material change in his economic circumstances affecting his ability to pay restitution.

Signed: August 5, 2011

Richard L. Voorhees
United States District Judge